Nicholson, C. J.,
delivered the opinion of the Court.
On the 5th of February, 1862, L. W. Estis & Co. delivered to the Nashville and Chattanooga Railroad Co., at their depot in Nashville, fifty-two barrels of whisky for shipment to Memphis, and took the receipt therefor of the freight agent of the company. Prior to this date, to-wit, on the 20th of January, 1862, Gen. Johnston,' commander of the Confederate army, had ordered that the railroad should be used exclusively in transporting military supplies, and that no private freight should be transported. Military guards were stationed at the depot to enforce this order. On account of this military occupation of the road, the fifty-two barrels of whisky remained in the depot until the 16th of February, 1862, when they were destroyed by order of Gen. Floyd, commanding the rear division of the retreating army, to prevent the demoralization of citizens and soldiers from drink *624 ing, and to prevent a mob. Gen. Floyd superintended tbe execution of this order in person.
In view of these facts, the Circuit Judge, Carey, in addition to matters not excepted to, charged the jury that the so-called Confederate government was a recognized belligerent power claiming, having, and exercising, at the time of the alleged destruction of the property in question, dominion and control over the territory occupied by the parties to this suit, and of which they were citizens. That the army of the said Confederate government was the enepiy .of the public or people with which the said Confederate government was at war, but was not, in the "eye of the law, the enemy of the public or people of the so-called Confederate States, and that therefore, as related to the defendant to this suit, the said army was not the public enemy, and that assuming the fact to be as claimed by the defendant, that said whisky was destroyed by officers and members of said army, or by their direction and order, such fact would not constitute a defense to the plaintiff’s cause of action.
Under this charge the plaintiffs obtained a verdict and judgment for $4,000, and the defendants appealed in error to this Court.
The only question is as to the correctness of this charge.
The defendants were sued as common carriers, and one of the defenses relied on was, that the whisky was destroyed by the “public enemy,” and for that reason that they were not liable. The charge above quoted had special reference to that defense, and if it *625 had been clearly confined to that, it would have been unexceptionable. The term “ public enemy,” as applicable to the undertaking of a common carrier, must be construed to mean the enemy of the State or Government of which the common carrier is a citizen or member. It was so held in the case of the Southern Express Co. v. Womack, 1 Heis., 270. It follows as to the Confederate army that the Railroad Company could not escape the liability of a common carrier upon the ground that that army was a public enemy, and to that extent the charge was not erroneous.
But the charge does not stop with this statement of the law. It proceeds: “ Assuming the fact to be, as claimed by the defendant, that said whisky was destroyed by officers of the Confederate army, or by their orders, such fact would not constitute a defense to plaintiffs’ cause of action.”
This portion of the charge is susceptible of two constructions. First, it may mean that the destruction of the whisky by Confederate officers would be no defense, because the Confederate army was not a “ public enemy,” and in that view the instruction would be entirely consistent with the law as already stated by the Judge. But second, the language used may be interpreted to mean that the destruction of the whisky by the Confederate officers could in no way be relied on as a defense to plaintiffs’ action. If the jury understood the charge in this latter sense, (and it is not unreasonable that they should have done so) they understood the instruction to be. that if the *626 whisky was destroyed by Confederate officers to prevent it from falling into the hands of the Federal army, from which the Confederate army was retreating, or to prevent the demoralization of the troops of both armies by its use, and the consequent damages to the citizens from mobs of drunken soldiers, still such destruction of the whisky for such purposes would constitute no defense to the action under the general issue.
It is to be observed, as was correctly stated by the Circuit Judge, that at the time the whisky was destroyed, the Confederate military authorities had and exercised control and dominion over the territory where the whisky was deposited.
This control and dominion had been exercised in taking possession of' the railroad, and appropriating it by military force to military purposes. For the time being, the 'railroad company ceased to be a common carrier and was allowed to carry only for the army. The destruction of the whisky was effected in the exercise of the same military control and dominion; and' whether it was exercised as a military measure, to prevent the whisky from falling into the pursuing army, or whether upon the necessity for its destruction to save the" citizens from the impending dangers of a pursuing soldiery when excited, and infuriated by the use of the whisky, it is not material to inquire. Whether it was destroyed for the one purpose or the other, was a question of fact to be determined by the jury; and if the destruction was for either purpose, and under the necessity which justifies such ap *627 propriation of private property, it would be a ground of defense.
We deem it unnecessary to discuss the law applicable to this last view of the case, as it was fully laid down at the present term in the case of Wisdom v. Harrison.
It is sufficient for our present purpose to state that the charge of the Circuit Judge was well calculated to exclude from the consideration of the jury a ground of defense which the defendants might legitimately make, and for this error we reverse the judgment, and remand the case for another trial.